**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**BRIAN BERK,**
      Plaintiff,

vs.                                    Case No.: 8:26 cv 1049

**DEPUTY JESSICA YODER,** in her
individual capacity**, DEPUTY SEAN O'KEEFE,**
in his individual capacity**, DEPUTY JACOB
EARNER,** in his individual capacity**, CORPORAL
RUSSELL EPEARDS,** in his individual capacity**,
DEPUTY TIMOTHY DEGRASSE,** in his
individual capacity**, DEPUTY DANIEL WILSON,**
in his individual capacity**,**
      Defendant.

_____/

## **COMPLAINT**

Plaintiff, Brian Berk ("Berk"), sues defendants, Deputy Jessica Yoder ("Yoder"), in her individual capacity, Deputy Sean O'Keefe ("O'Keefe"), in his individual capacity, Deputy Jacob Earner ("Earner"), in his individual capacity, Corporal Russell Epeards ("Epeards"), in his individual capacity, Deputy Timothy Degrasse ("Degrasse"), in his individual capacity, and Deputy Daniel Wilson ("Wilson"), in his individual capacity, and alleges:

### **PARTIES**

1. Berk is a US citizen that resides in Charlotte County, Florida.

2. At all material times, Yoder was a police officer with the Sarasota County Sheriff's Office in Sarasota, Florida.

3. At all material times, O'Keefe was a deputy with the Charlotte County Sheriff's Office in Charlotte County, Florida.

4.  At all material times, Earner was a deputy with the Charlotte County Sheriff's Office in Charlotte County, Florida.

5.  At all material times, Epeards was a corporal with the Charlotte County Sheriff's Office in Charlotte County, Florida.

6.  At all material times, Degrasse was a deputy with the Charlotte County Sheriff's Office in Charlotte County, Florida.

7.  At all material times, Wilson was a deputy with the Charlotte County Sheriff's Office in Charlotte County, Florida.

## JURISDICTION AND VENUE

8.  This action arises under 42 U.S.C. §§ 1983, 1985 and 1986 and the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and Article IV of the Privileges and Immunities Clause.

9.  Venue is proper as the incidents that give rise to the causes of action occurred in the Middle District of Florida.

## FACTUAL BACKGROUND

10. Berk was a homeless, 36-year-old male.

11. Berk had a pending bench warrant for failure to appear for traffic violation hearing. The citation that provided the basis for the hearing was failure to have a proper registration for a moped.

12. On February 4, 2025, Berk was residing at a homeless camp in Sarasota County near Englewood Hospital in Englewood, Florida.

13. On the same day, a bondsman contacted Epeards about assistance in locating a female suspect in a homeless camp near Englewood Hospital.  Epeards then contacted Yoder for assistance because the camp is located in Sarasota County.

14. At approximately 9:47 pm on February 4, 2025, an Agency Assist call for service was documented by Charlotte County Sheriff's Office to Sarasota County Sheriff's Office for help with detaining the female suspect.

15. Prior to entering the homeless camp, Epeards, O'Keefe, Wilson and Degrasse met in a nearby commercial parking lot and conspired, in violation of Charlotte County Sheriff's Office procedures, to not turn on their body worn cameras ("BWC") while they were in the homeless camp.

16. From the parking lot, the officers went to the hospital parking lot and met with Earner, Yoder and two other officers. There was discussion at that point that BWC were not going to be turned on in the homeless camp.

17. At approximately 10:43 pm, Yoder was speaking with Berk in front of a tent that was located within the homeless encampment. Berk asked if he could use the restroom and Yoder complied.

18. Berk walked approximately 15 feet from Yoder, behind a shrub, and started to remove his shorts to go to the bathroom while another officer shined a flashlight directly on Berk.

19. Berk, clearly embarrassed, took a couple of steps out of the light, and into more foliage, to finish going to the bathroom.

20. Degrasse made the determination that Berk was attempting to flee and pursued Berk into the foliage.

21. Berk became terrified as the officers attempted to aggressively subdue him while he was attempting to poop.

22. Berk stumbled away from the officers.

23. Degrasse used hands on force against Berk and tackled him into a pile of debris while Berk's shorts were off his waist. He was told to get on the ground "you mother fucker."

24. O'Keefe removed his taser as a show of force against Berk and placed the red dot on his chest.

25. At no point was Berk attempting to flee or resisting.

26. O'Keefe commanded that Berk "stand the fuck up" and he did so upon command without incident. Berk repeatedly explained that he was not fleeing and was only trying to go to the bathroom.

27. O'Keefe instructed the others to place handcuffs on Berk. Earner pushed Berk down against a generator and into a pile of debris.

28. Berk begged for the officers to stop, never said anything derogatory to the officers, and complied with demands.

29. Earner grabbed Berk by the hair and held his head down. Berk pled for the officers to "please stop."

30. O'Keefe grabbed Berk's right hand and held it against Berk's will. Degrasse placed Berk's right hand in handcuffs and pulled it behind Berk's back.

31. Earner grabbed Berk around the neck and placed him in a choke hold.

32. Yoder grabbed Berk's left hand and pinned it against the handle of the generator.

33. Wilson removed his taser as a show of force and pointed the taser at Berk's chest while Yoder, O'Keefe and Earner pinned Berk down. Wilson then questioned Berk, "Do you see the taser?" as he placed the taser against Berk's chest. Berk replied, "Yes." Wilson then demanded that "he put his fucking hand down", but his hands were being held by Yoder and O'Keefe.

34. O'Keefe grabbed Berk by the neck and held it down while Wilson proceeded to place the taser against Berk's neck and told him he was going to be tased. Berk pled repeatedly for the officers to stop.

35. As the taser was against Berk's neck he explained he was just trying to go to the bathroom and never attempted to flee.

36. Berk then asked why the officers were placing so much pressure on his neck and O'Keefe told Berk he was "fucking resisting" and to "fuck off Brian."

37. Berk again stated he had to go to the bathroom, and asked if he could stand up and breathe. He was told "no" repeatedly as Wilson held the taser against his neck for over thirty seconds.

38. Yoder responded to Berk request to go to the bathroom by repeatedly telling him to, "Shit in his pants."

39. After Berk was in handcuffs, he was repeatedly told to "Fuck off" and was a "fucking bitch."

40. Berk was escorted out of the homeless camp and taken to the Sarasota County Jail.

41. During the incident, BWC were involuntarily activated when tasers were drawn against Berk.

42. After the incident, Epeards, Degrasse, O'Keefe, Wilson, and Earner conspired to mislabel the video evidence so it would automatically purge through the electronic system. Further, Epeards, Degrasse, O'Keefe, Wilson and Earner intentionally hid the excessive force and use of force by failing to complete mandatory Use/Show of Force reports.

43. Epeards, Degrasse, O'Keefe, Wilson and Earner knew their conduct to cover-up evidence was in violation of Charlotte County Sheriff's Office policies and procedures. Epeards, Degrasse,

O'Keefe, Wilson and Earner all had the opportunity to report the conspiracy to authorities in the Charlotte County Sheriff's Office, but failed to do so.

44. At 12:44am, on February 5, 2025, Wilson intentionally mislabeled his BWC video as "False Activation" using the Axon application. At 3:43 am, Wilson viewed the BWC video eight different times. At 4:01 am Wilson intentionally mislabeled the BWC video again as "False Activation." At 6:14 am, Wilson docked his BWC and the video uploaded to the Charlotte County Sheriff's Office system set to be deleted in 90 days. Wilson failed to complete a Use/Show of Force report.

45. At 12:12am, on February 5, 2025, Degrasse viewed his BWC video in the Axon application. At 12:25 am, Degrasse viewed the BWC video a second time. At 12:34 am Degrasse intentionally mislabeled his BWC video as "False Activation." At 12:36 am, Degrasse viewed the BWC video a third time. At 5:15 am, Degrasse docked his BWC and the video uploaded to the Charlotte County Sheriff's Office system set to be deleted in 90 days. Degrasse failed to complete a Use/Show of Force report.

46. Earner did not make any effort to upload his BWC for seven days after the incident. On February 11, 2025, Earner did ultimately dock his camera for upload, but intentionally did not label his video. Further, he failed to complete a Use/Show of Force report.

47. At 12:44am, on February 5, 2025, O'Keefe viewed his BWC video in the Axon application. At 12:46 am, O'Keefe viewed the BWC video a second time. At 12:49 am O'Keefe intentionally mislabeled his BWC video as "False Activation." At 4:25 am, O'Keefe docked his BWC and the video uploaded to the Charlotte County Sheriff's Office system set to be deleted in 90 days. O'Keefe failed to complete a Use/Show of Force report.

48. On February 5, 2025, at 4:36am, Epeards docked his BWC for upload and added the category "Misc." At 5:00 am Epeards updated the retention level of the video and set deletion for May 6, 2025. Epeards knew of the use of tasers by the other officers and did not ensure any of the reports were completed even though he was the supervisory officer on the scene. Further, Epeards knew of the conspiracy to falsely label the videos and failed to correct the officers about the improper conduct.

49. Yoder failed to complete any documentation of the use of force or show of force.

50. On February 13, 2025, a Charlotte County Sheriff's Office employee was reviewing documents and discovered that the videos were improperly labeled and alerted her supervisor.

51. An internal affairs investigation was noticed by the Charlotte County Sheriff's Office on February 27, 2025, to Epeards, O'Keefe, Wilson, and Earner, and on March 3, 2025, to Degrasse.

52. During the internal affairs investigation Epeards, O'Keefe, Wilson, Earner, Degrasse and Yoder conspired to cover-up the conspiracy to conceal evidence of excessive use and show of force.

53. On March 4, 2025, Yoder provided a statement to the internal affairs investigator. Yoder had a personal relationship with Epeards and O'Keefe. Yoder attempted to cover-up the use of force during her statements to internal affairs. Yoder denied seeing the use of taser although she was directly involved with holding Berk's hand against the generator while a taser was held to his chest and neck. Further, Yoder denied witnessing any further use of force although she witnessed a chokehold, hair pulling and neck restraints used against Berk. Finally, Yoder denied witnessing any foul language used against Berk even though she repeatedly told him to "Shit in his pants."

54. On April 15, 2025, Degrasse was terminated from the Charlotte County Sheriff's Office for his role in falsifying records and neglecting his duties.

55. On April 15, 2025, Earner was disciplined and placed on probation by the Charlotte County Sheriff's Office for neglect of duty and violation of official procedures.

56. On April 15, 2025, Epeards was terminated from the Charlotte County Sheriff's Office for his role in conduct unbecoming, violation of official procedures and neglecting his duties.

57. On April 15, 2025, O'Keefe was terminated from the Charlotte County Sheriff's Office for his role in falsifying records and neglecting his duties.

58. On April 15, 2025, Wilson was terminated from the Charlotte County Sheriff's Office for his role in falsifying records and neglecting his duties.

59. There were no reports that Berk was under the influence of any drugs or alcohol during the incident.  Further, Berk was not charged for any crime associated with the incident.

**COUNT I – Civil Rights Violation Under 42 U.S.C. Section 1983 for excessive force under the Fourth Amendment of the US Constitution**
**(Against Wilson and Earner)**

60. Berk re-alleges and incorporates by reference the preceding paragraphs 1 through 41 and 58, as if stated fully herein.

61. At all material times, Wilson and Earner had a legal duty to use only that amount and degree of force as was reasonable under the circumstances.

62. Berk was following commands, not resisting, and posed no threat to Yoder, Degrasse, O'Keefe, Earner, Epeards or Wilson.

63. Earner blatantly disregarded Berk's Fourth Amendment rights when he wrongfully used excessive force against Berk in light of the circumstances by grabbing his hair, pushing his neck forward, and placing him in a chokehold in violation of Charotte County Operations Manual, Executive Order 13929, Fla. Stat. §§ 776.012, .013, .031, and CALEA 4.1.6, 4.1.7.

64. Wilson blatantly disregarded Berk's Fourth Amendment rights when he wrongfully used excessive force against Berk in light of the circumstances by placing his taser directly on Berk's chest and neck in violation of Charlotte County Operations Manual and CALEA 4.1.4.

65. Earner and Wilson's actions are the direct and proximate cause of physical and emotional damage to Berk.

66.  Berk's damages are ongoing and he will continue to suffer damages into the future.

WHEREFORE, Berk prays for a judgment for compensatory damages, punitive damages, attorney's fees and costs, and any other relief just and proper.

**COUNT II – Civil Rights Violation Under 42 U.S.C. Section 1983 for failure to stop unlawful acts under the Fourth Amendment of the US Constitution
(Against Yoder, Epeards, Degrasse, Wilson, Earner and O'Keefe)**

67. Berk re-alleges and incorporates by reference the preceding paragraphs 1 through 41 and 58, as if stated fully herein.

68. At all material times, Yoder, Degrasse, Wilson, Epeards, Earner, and O'Keefe were present when Berk was subject to excessive force by Earner and Wilson.

69. At all material times, Yoder, Degrasse, Wilson, Epeards, Earner, and O'Keefe were present when Berk repeatedly requested Earner and Wilson to stop the excessive force.

70. Yoder, Degrasse, Wilson, Epeards Earner, and O'Keefe ignored the pleas by Berk to stop the excessive force even though they were all in a position to intervene.

71.  Yoder, Degrasse, Wilson, Epeards Earner, and O'Keefe's failures to stop the excessive force by Earner and Wilson directly and proximately caused deprivation of Berk's Fourth Amendment right to be free from excessive force.

72. Berk has suffered and continues to suffer damages as a result of Yoder, Degrasse, Wilson, Epeards, Earner, and O'Keefe failing to stop the unlawful acts of Earner and Wilson.

WHEREFORE, Berk prays for a judgment for compensatory damages, punitive damages, attorney's fees, costs, and any other relief just and proper.

### COUNT III – Civil Rights Violation Under 42 U.S.C. Section 1985 for conspiracy to deprive rights under the US Constitution
### (Against Yoder, Epeards, Earner, O'Keefe, Degrasse and Wilson)

73. Berk re-alleges and incorporates by reference the preceding paragraphs 1 through 31 as if stated fully herein.

74. Charlotte County Sheriff's Office has a policy regarding the activation of body worn cameras. G.O. 11.52.

75. Charlotte County Sheriff's Office has a policy against the falsification of official records. G.O. 3.50.I.4.c.4.

76. Sarasota County Sheriff's Office has a policy regarding the documentation of use of force and show of force.

77. Prior to entering the homeless camp, Epeards, Earner, O'Keefe, Degrasse, and Wilson conspired, in violation of Charlotte County Sheriff's Office policy, to not voluntarily turn on body worn cameras prior to entering the homeless camp.  The intention of the conspiracy was to hide the anticipated use of excessive force against the homeless.

78. After excessive force was used against Berk, Epeards, Earner, O'Keefe, Degrasse, and Wilson conspired to mislabel the involuntary body worn camera footage of the incident, in violation of Charlotte County Sheriff's Office policy, to deprive Berk of his Constitutional rights.

79. After excessive force was used against Berk, Epeards, Earner, O'Keefe, Degrasse, and Wilson conspired to not complete use of force and show of force written documentation, in violation of Charlotte County Sheriff's Office policy, to deprive Berk of his Constitutional rights.

80. After excessive force was used against Berk, Yoder conspired to not complete use of force and show of force written documentation, in violation of Sarasota County Sheriff's Office policy, to deprive Berk of his Constitutional rights.

81. The actions of Yoder, Epeards, Earner, O'Keefe, Degrasse, and Wilson directly and proximately caused deprivation of Berk's Constitutional rights.

82. Berk has suffered and continues to suffer damages as a result of the deprivation of his Constitutional rights.

WHEREFORE, Berk prays for a judgment for compensatory damages, punitive damages, attorney's fees, costs, and any other relief just and proper.

### COUNT IV – Civil Rights Violation Under 42 U.S.C. Section 1986 for neglect to prevent conspiracy of deprivation of rights under the US Constitution
### (Against Yoder, Epeards, Earner, O'Keefe, Degrasse and Wilson)

83. Berk re-alleges and incorporates by reference the preceding paragraphs 1 through 10, 15, 16 and 41 through 57, as if stated fully herein.

84. Epeards, Earner, O'Keefe, Degrasse, Wilson and Yoder were aware of the conspiracy to mislabel video evidence of the excessive force used against Berk on February 4, 2025.

85. Epeards, Earner, O'Keefe, Degrasse, Wilson and Yoder were aware of the conspiracy to not complete written documentation the use of force and show of force used against Berk on February 4, 2025.

86. Epeards, Earner, O'Keefe, Degrasse, Wilson and Yoder intended to mislabel video evidence and not complete written documentation of the use of force and show of force so that Berk would be deprived of his Constitutional rights.

87. Epeards, as the primary supervisory officer on scene, knew the conspiracy to mislabel video and not report use of force or show of force documents was in violation of Charlotte County Sheriff's Office procedures.

88. Epeards had ample opportunity to prevent the conspiracy to deprive Berk's Constitutional rights on February 4, 2025 through the date the internal affairs investigation commenced, but neglected to do so.

89. Earner knew the conspiracy to mislabel video and not report use of force or show of force documents was in violation of Charlotte County Sheriff's Office procedures.

90. Earner had ample opportunity to prevent the conspiracy deprive Berk's Constitutional rights on February 4, 2025, through the date the internal affairs investigation commenced, but neglected to do so.

91. O'Keefe knew the conspiracy to mislabel video and not report use of force or show of force documents was in violation of Charlotte County Sheriff's Office procedures.

92. O'Keefe had ample opportunity to prevent the conspiracy deprive Berk's Constitutional rights on February 4, 2025, through the date the internal affairs investigation commenced, but neglected to do so.

93. Degrasse knew the conspiracy to mislabel video and not report use of force or show of force documents was in violation of Charlotte County Sheriff's Office procedures.

94. Degrasse had ample opportunity to prevent the conspiracy deprive Berk's Constitutional rights on February 4, 2025, through the date the internal affairs investigation commenced, but neglected to do so.

95. Wilson knew the conspiracy to mislabel video and not report use of force or show of force documents was in violation of Charlotte County Sheriff's Office procedures.

96. Wilson had ample opportunity to prevent the conspiracy deprive Berk's Constitutional rights on February 4, 2025, through the date the internal affairs investigation commenced, but neglected to do so.

97. Yoder knew that Epeards and O'Keefe were under investigation for the actions that occurred against Berk.

98. Yoder knew that misleading the investigation against Epeards and O'Keefe would constitute a crime in the State of Florida.

99. Yoder had the opportunity to disclose that she witnessed the use of excessive force against Berk on February 4, 2025 when she gave a statement under oath during the internal affairs investigation.

100.    In her statement under oath, Yoder denied that she witnessed any use of tasers against Berk although video evidence exists that clearly show Yoders direct involvement in restraining Berk while a taser was held to his chest and neck for over 30 seconds.

101.    Yoder's false statements during the investigation were made to hinder the investigation against Epeards and O'Keefe.  Yoder's false statements were neglectful in preventing the conspiracy against Berk to deprive him of his Constitutional rights.

102.    As a direct and proximate result of the actions of Yoder, Epeards, Earner, O'Keefe, Degrasse, and Wilson, Berk has suffered physical and emotional harm that was immediate and continues.

WHEREFORE, Berk prays for a judgment for compensatory damages, punitive damages, attorney's fees, costs, and any other relief just and proper.

### JURY DEMAND

Berk seeks a trial by jury on all issues so triable.

Dated this 10th day of April 2026.

**Law Office of David W. Smith**
5020 Clark Road #412
Sarasota, FL 34233
P: (941) 312-3078
*david@dwsmithlaw.com*
*avery@dwsmithlaw.com*
Attorney for Berk
 /s/ David W. Smith_____
David W. Smith, Esq.
Fla. Bar No. 70689